## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

**TRIGINAL D. JACKSON,**

      **Petitioner,**

v.                                                                            **No. 12-cv-0543 LH/SMV**

**N.M. ATT'Y GEN. and
N.M. DEP'T OF CORR. PROB. & PAROLE,**

      **Respondents.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Mr. Jackson's 28 U.S.C. § 2254 Petition [Doc. 1], filed on May 10, 2012.  The case was referred to me by the Honorable C. LeRoy Hansen, Senior United States District Judge, on August 21, 2012, for analysis and recommendation of ultimate disposition.  Order of Reference . . . [Doc. 26].  Having reviewed the entire record and relevant law, and being otherwise fully advised in the premises, I recommend denying the Petition and dismissing this case with prejudice.

## Background

Petitioner was indicted for aggravated assault on August 12, 2009.  Grand Jury Indictment [Doc. 21-1] at 11.  Prior to trial, on April 29, 2010, the trial court granted Petitioner's request to represent himself.  [Doc. 21-1] at 20–21.  The court "determined that Mr. Jackson prefer[ed] to proceed pro se and he made a voluntary, knowing, and intelligent waiver of his right to counsel."  *Id.*  The trial court appointed his former public defender, Cyndi Sanchez, as stand-by counsel.  [Doc. 1] at 16.  Petitioner, however, believed that his waiver of his right to

counsel "should have been the end of the need for Ms. Sanchez to appear in any proceeding."
[Doc. 1] at 16.

Prior to trial, the court granted two motions to continue filed by the state. First, the court granted an extension until June 4, 2010, and second, until September 4, 2010. [Doc. 21-1] at 15, 22. However, it does not appear that any notice of trial setting was issued until October 25, 2010. RP at 51. At that time, the trial was set to begin on December 6, 2010, and in fact, it did commence on that day. Transcript of Dec. 6, 2010 Proceedings.

Eventually, On December 8, 2010, Petitioner was convicted by a jury of aggravated assault with a deadly weapon. [Doc. 21-1] at 1.[1] However, before he was sentenced, Petitioner filed his first federal petition for a writ of habeas corpus in this Court on April 7, 2011. *Jackson v. New Mexico*, 11-cv-0294 JAP/KBM [Doc. 1]. The action was dismissed as premature on June 23, 2011, because Petitioner had not exhausted his state-court remedies. *Jackson*, 11-cv-0294 JAP/KBM, [Doc. 25].

Petitioner was sentenced on May 27, 2011. [Doc. 21-1] at 1. The judgment was entered on June 13, 2011. [Doc. 21-1] at 1; [Doc. 21-2] at 33. Petitioner unsuccessfully attempted to appeal his conviction several times. Ultimately, the state Court of Appeals held that Petitioner's notices of appeal were improperly filed, rejected his claim that Ms. Sanchez was ineffective for failing to file an appeal (because she was not his attorney), and dismissed the direct appeal on January 4, 2012. [Doc. 21-2] at 56–60.

---

[1] The judgment indicates that Petitioner was convicted on December 6, 2010, but this appears to be an error because, according to the trial transcripts, the jury did not return its guilty verdict until December 8, 2010. Transcript of Dec. 8, 2010 Proceedings at 2.

Petitioner moved the Court of Appeals to reconsider on January 13, 2012, [Doc. 21-2] at 61–66, but the motion was summarily denied on February 2, 2012 [Doc. 21-3] at 1.  Petitioner filed a petition for writ of certiorari on February 17, 2012, [Doc. 21-3] at 6–16, but it, too, was summarily denied [Doc. 21-3] at 27.

On May 7, 2012, Petitioner filed a "Petition for Writ of Habeas Corpus Third Attempt" in state court.  [Doc. 21-3] at 29–40.  He asserted various claims, including the three that he raises here.  [Doc. 21-3] at 31–34.  Specifically, Petitioner asserted that his stand-by counsel "tr[ied] to take over the case."  [Doc. 21-3] at 31.  Further, Petitioner claimed that "Since, [sic] NMPD Ms. Sanchez never remover [sic] herself from [Petitioner's] case[,] it would be reasonable that she has a duty to file notice [sic] of appeal or at least ensure that [Petitioner's] notice is filed." [Doc. 21-3] at 32.  Lastly, Petitioner alleged that his right to a speedy trial[2] was violated. [Doc. 21-3] at 33–34.  The state habeas petition was summarily denied on the day it was filed. [Doc. 21-3] at 41.

Three days later, on May 10, 2012, Petitioner filed his habeas petition in this Court. [Doc. 1].  While his habeas petition was pending in this Court, Petitioner attempted to appeal the denial of his state habeas petition.  [Doc. 21-3] at 49.  It is unclear what became of this attempt. However, Petitioner subsequently filed two other state habeas petitions, both on August 6, 2012. [Doc. 43-1] at 1–4, 7–9.  Both petitions were summarily dismissed on August 6, 2012, because "as a matter of law," Petitioner was not entitled to relief.  [Doc. 43-1] at 5, 12.

---

[2] Petition appears to quote an unidentified state-court rule in making his speedy trial argument, as well as the Speedy Trial Act, the Sixth Amendment, and some cases interpreting the Sixth Amendment.  [Doc. 21-3] at 33−34.

Petitioner filed a petition for a writ of certiorari on August 23, 2012.  [Doc. 43-1] at 14−34.  He raised claims for, *inter alia*, his stand-by counsel's allegedly "try[ing] to take over the case [by participating in] sidebars . . . without Petitioner [and] managing the case without Petitioner'[s] permission."  [Doc. 43-1] at 21–22.  Petitioner further asserted that his stand-by counsel was ineffective because she did not appeal his conviction.  [Doc. 43-1] at 22.  Lastly, he claimed that his speedy trial right[3] was violated.  [Doc. 43-1] at 22–23.  On November 14, 2012, the state attorney general responded in opposition [Doc. 43-2] at 1–9.  The New Mexico Supreme Court summarily denied certiorari on December 5, 2012.  [Doc. 43-2] at 36.

On April 5, 2013, Judge Hansen adopted my recommendations and found that Petitioner's claims were exhausted.  [Doc. 55].  Pursuant to my order, [Doc. 56], Respondents submitted the record proper ("RP"), and on June 14, 2013, they amended their answer [Doc. 62].  Petition has not filed a reply.

### Standard For § 2254 Habeas Petitions

The provisions of § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case.[4]  A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention.  The Court cannot grant habeas relief pursuant to § 2254(d) unless the decision in a petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] In asserting a violation of his speedy trial right, Petitioner references "New Mexico Supreme Court rule," [Doc. 43-1] at 22, the "Speedy Trial Act," *id.* at 23, and the Fifth and Sixth Amendments," *id.*

[4] Because this Petition was filed after the effective date of the AEDPA, its standards apply to guide this Court's determinations. *See, e.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons*, 531 F.3d 1306, 1319 (10th Cir. 2008).

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

§ 2254(d).  "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result."  *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003).  The standard is "highly deferential" to state courts, and the Supreme Court has added that it is "difficult to meet," as it demands that state-court decisions be given the benefit of the doubt.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law . . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases."  *Id.* at 405.  The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature."  *Id.*  Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Price v. Vincent*, 538 U.S. 634, 640 (2003).  Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even

to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted).  "Rather, that application must be objectively unreasonable." *Id.* at 76.

Pursuant to AEDPA, state-court findings of fact are "presumed to be correct." § 2254(e)(1).  Therefore, an application for a writ of habeas corpus that challenges a finding of fact must be dismissed unless the petitioner can show by clear and convincing evidence that the determination was factually erroneous. *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

Finally, courts must construe a pro se litigant's pleadings liberally and hold them to a less stringent standard than is required of formal pleadings drafted by counsel. *Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  This requires a court to "reasonably read the pleadings to state a valid claim on which the [pro se litigant] could prevail . . . despite the [pro se litigant's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F.2d at 1110.  "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on

which relief can be based." *Id.*  Finally, a court "cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall*, 935 F.2d at 1110).

### Analysis

Petitioner asserts several grounds for federal habeas relief, only four of which are actual habeas claims.[5]  First, he argues that he was effectively denied his right to self-representation by the presence of his stand-by counsel.  [Doc. 1] at 16, 17.  Second, he claims that his stand-by counsel was constitutionally ineffective for failing to appeal his conviction.  *Id.*  Third, he complains that his stand-by counsel had a conflict of interest.  *Id.*  Finally, he contends that his right to a speedy trial was violated.  *Id.* at 18.

### I.     Violation of the Right to Self-Representation

Petitioner apparently claims that his stand-by counsel's presence and actions unconstitutionally eroded his right to self-representation.  [Doc. 1] at 16.  He claims that after the trial court granted his motion to proceed pro se, "[t]his should have been the end of the need for Ms. Sanchez to appear in any proceeding."  [Doc. 1] at 16, 17.  Specifically, he complains that:

> On my trial date Dec. 6, 2011 [1] Miss Sanchez appeared.  The Court had appointed her as stand-by counsel.  Miss Sanchez [2] spoke to the Jury on my behalf, [3] prepared jury instructions, and [4] held meet and confer meetings with the Judge and ADA without my present [sic], permission[,] or approval.  [5] The ADA refused to handle these matters with me and would only speak to

---

[5] The other arguments relate to exhaustion.  For example, Petitioner argues that his direct appeal should have been accepted as properly filed.  *See* [Doc. 1] at 15–16 ("How can a man exhaust his remedies when most of his attempted filing [sic] doesn't [sic] even appear on record?").  However, because the Court has found that the substantive claims raised in the current petition were exhausted by Petitioner's state habeas claims, his arguments regarding the record below—in claims one and four, [Doc. 1] at 15, 17—are moot.  *See* [Doc. 55].

> Ms. Sanchez on any legal matters involving the case. . . . Upon
> Sentencing Date I returned [6] Ms. Sanchez was in the Court still
> speaking to the Judge and ADA on my behalf.  I was sent to prison
> for 60 day evaluation and upon my return [7] Ms. Sanchez still
> appeared in court performing her duties as counsel.

[Doc. 1] at 16; *see id.* at 17 (summarizing the challenged actions of Ms. Sanchez).  Respondents

counter that Ms. Sanchez's presence and actions as standby counsel did not erode Petitioner's

right to represent himself.  [Doc. 62] at 6–9.

"The Constitution does not force a lawyer upon a defendant."  *Adams v. United States ex*

*rel. McCann*, 317 U.S. 269, 279 (1942).  A criminal defendant has a constitutional right to

conduct his own defense.  *Faretta v. California*, 422 US. 806, 819 (1975).

> To force a lawyer on a defendant can only lead him to believe that
> the law contrives against him. . . . The defendant, and not his
> lawyer or the State, will bear the personal consequences of a
> conviction. It is the defendant, therefore, who must be free
> personally to decide whether in his particular case counsel is to his
> advantage. And although he may conduct his own defense
> ultimately to his own detriment, his choice must be honored out of
> that respect for the individual which is the lifeblood of the law.

*Id.* at 834 (internal quotation marks omitted).  Nevertheless:

> A defendant's Sixth Amendment rights are not violated when a
> trial judge appoints standby counsel—even over the defendant's
> objection—to relieve the judge of the need to explain and enforce
> basic rules of courtroom protocol or to assist the defendant in
> overcoming routine obstacles that stand in the way of the
> defendant's achievement of his own clearly indicated goals.
> Participation by counsel to steer a defendant through the basic
> procedures of trial is permissible even in the unlikely event that it
> somewhat undermines the pro se defendant's appearance of control
> over his own defense.

*McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984).  "Ultimately, a defendant is entitled to "a fair

chance to present his case his own way."  *Id.* at 177.  To determine whether a defendant's right to

self-representation has been violated, courts must determine whether the defendant had "actual control over the case he [chose] to present to the jury, [and whether] participation by standby counsel [destroyed] the jury's perception that the defendant [was] representing himself."   *Id.* at 178.   The right to maintain actual control of self-representation is eroded when standby counsel "make[s] or substantially interfere[s] with any significant tactical decisions, controls the questioning of witnesses, or "speak[s] *instead* of the defendant on any matter of importance."   *Id.* (emphasis in original).

Although Petitioner complains that Ms. Sanchez spoke to the jury on his behalf, this is not borne out by the record.   The record indicates that she spoke in the presence of the jury only three times during the three-day-long trial.   Once, while Petitioner was cross-examining a witness, she asked, "Judge, may I have a moment with—."   Trial Transcript, December 6, 2011, at 175:3.   She spoke twice during Petitioner's own testimony.   She asked the trial judge for permission to speak with Petitioner prior to cross-examination.   Trial Transcript, December 7, 2013, at 36:15–16.   Then, during cross-examination, she asked the trial judge how she might properly object.   Before the court could rule, Petitioner added, "Yeah, I want to object myself." Petitioner's objection was immediately sustained.   *Id.* at 69:9–15.   Other than these three instances, it does not appear that the jury heard Ms. Sanchez's voice.

There is no dispute that Ms. Sanchez was present at the trial and sentencing hearings. Additionally, the record confirms that Ms. Sanchez drafted some proposed jury instructions "based on [Petitioner's] representation to [her] of what he would be presenting [at trial]."   Trial Transcript, December 7, 2013, at 83:16–19.   Moreover, Petitioner expressly approved the

instructions.  *Id.* at 89:15–20 (approving of the self-defense instruction); *id.* at 100:16–102:14 (arguing in support of an entrapment instruction).

The transcripts do not support Petitioner's allegation that Ms. Sanchez spoke with the judge and the prosecutor outside of Petitioner's presence.  The record does reflect that the trial court did not always immediately recognize Petitioner's attempts to speak.  For example, at one point, Ms. Sanchez, the judge, and the prosecutor engaged in a brief but fast-paced exchange (out of the presence of the jury) regarding which packets of proposed jury instructions were which. *Id.* at 92:4–95:9.  During this very brief exchange, the trial judge did not immediately recognize Petitioner's attempts to interject.  Later, the judge explained that Petitioner had not drafted any of the proposed instructions himself, and, presumably therefore, would not have been of any assistance in determining which packet was which.  *Id.*

On thorough review of the entire record, including the trial transcripts, I find that Petitioner maintained actual control over the case presented to the jury.  *McKaskle*, 456 U.S. at 178.  The record establishes that Ms. Sanchez was present in the courtroom during the trial and that she approached the bench for at least some of the bench conferences.  However, her presence did not interfere with Petitioner's control over the organization and content of his own defense.  *See McKaskle*, 465 U.S. at 174.  She made no motion on Petitioner's behalf.  The only point of law she argued—regarding the self-defense jury instruction—was expressly authorized by Petitioner.  Although she was present during vior dire, she did not question the jurors or otherwise speak in front of them.  *See* Trial Transcript, December 6, 2013, at 18–81.  She questioned no witness.  She did not address the jury at any time.  Finally, on the few occasions when she addressed the court, she did so only to ask permission to consult with Petitioner or to

achieve Petitioner's clearly stated goals.[6]  She prepared jury instructions based on Petitioner's strategies, but offered only those that Petitioner authorized.  Trial Transcript, December 7, 2013, at 6–8, 83−103.

Petitioner conducted his own voir dire.  *See* Trial Transcript, December 6, 2013, at 18−81.  Petitioner presented his opening statement and closing argument.  *Id.* at 135:23–140:4 (opening); Trial Transcript, December 7, 2013, at 110:16–120:4 (closing).  Petitioner questioned and cross-examined witnesses himself.  Petitioner, and no one else, spoke to the jury on his behalf.

Ms. Sanchez's performance was beyond reproach and did not erode Petitioner's ability to present his case in his own way.

Furthermore, I find that no action by standby counsel could be seen as destroying the jury's perception that Petitioner was representing himself.  The trial judge introduced Ms. Sanchez to the jury as "standby counsel," present "to help [Petitioner] for consultation purposes only."  Trial Transcript, December 6, 2013, at 21:5–7.  Indeed, according to the record, Ms. Sanchez did nothing more.  She was almost entirely "seen, but not heard."  *McKaskle* at 173.  She neither competed with Petitioner, nor superseded his defense.  *See id.*  Very infrequently, she offered her assistance, leaving Petitioner the option of accepting it or not.  *See id.*  In the presence of the jury, Petitioner was allowed to address the court freely on his own behalf.  *Id.* at 179.  In fact, the trial transcript reflects no disagreement between Petitioner and Ms. Sanchez that could have given the jury a misimpression of Petitioner's self-representation.  Accordingly,

---

[6] For example, as evidenced by transcripts of the bench conferences, Ms. Sanchez went to great lengths to secure the presence of a witness whom Petitioner insisted was necessary but had not subpoenaed.  Trial Transcript, December 6, 2013, at 257; *see id.* at 114, 116, 125, 163; Trial Transcript, December 7, 2013, at 50.

Ms. Sanchez's actions did nothing to erode the jury's perception that Petitioner was in charge of his own case.[7]  Petitioner's right to represent himself was honored.  The question is not a close one.  Thus, this claim should be denied.

## II.    Ineffective Assistance for Failing to Appeal

Petitioner claims that Ms. Sanchez was constitutionally ineffective for failing to ensure that his direct appeal was filed.  *Id.* at 16, 17.

> I attempted to file a Notice of Appeal with the 2nd Judicial Court and the notice was not docketed.  Ms. Sanchez received a copy of this attempt to file and has a duty even in conflict to ensure that the notice of appeal is filed.  In other words she refused to get off the case until a very critical moment arrived.  (The appeal process)  Due to her Conflict of interest and ineffectiveness my appeal was expelled.  She failed in her duty to ensure filing.

[Doc. 1] at 16.

"A defendant who chooses to represent himself and has the assistance of court appointed standby counsel cannot succeed in establishing ineffective assistance against such counsel when it is clear that the defendant maintained control of his defense."  *Lee v. Hines*, No. 04-6130, 125 F. App'x 215, 217 (10th Cir. Oct. 4, 2004) (unpublished) (citing *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998); *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)).  First, Petitioner does not allege that he *asked* Ms. Sanchez to file an appeal.  Rather, he alleges that she should have *deduced* that he wanted her to file an appeal when she received a copy of his pro se appeal.  The argument is not persuasive.  At no other time during his self-representation did

---

[7] Petitioner also complains that the prosecutor refused to discuss legal matters with him. [Doc. 1] at 16, 17. First, the record is silent on this issue.  Second, it is not clear that the actions of the prosecutor—as opposed to standby counsel—are capable of eroding Petitioner's right to self-representation.  These issues notwithstanding, Petitioner's allegations do not bear on whether Petitioner was able to present his case as he saw fit.  Moreover, Petitioner does not allege, and the record does not show, that any actions by the prosecutor eroded the jury's perception that Petitioner himself was in charge of his case.

Petitioner want Ms. Sanchez to exercise her discretion on his behalf.  It is not reasonable to expect that she would have understood that he wanted her to file an appeal under the circumstances he describes.  More to the point, however, it is quite clear that Petitioner maintained control of his own defense.  Ms. Sanchez did not represent him.  Thus, he cannot establish that Ms. Sanchez was ineffective in failing to file an appeal on his behalf.  This claim should be denied.

**III.    Conflict of Interest**

Finally, Petitioner insists that Ms. Sanchez had a conflict of interest, which he did not waive, and which requires reversal of his conviction.  [Doc. 16] at 1.  Although it is not entirely clear to what conflict Petitioner refers, Respondents infer that the purported conflict relates to three "tort" lawsuits that Petitioner claims he filed against the New Mexico Public Defender Department ("NMPDD").  [Doc. 62] at 6–7.  This claim fails for several reasons.

First, a criminal defendant cannot manufacture a conflict of interest with his attorney by merely filing suit against her or her office.  *See Winfield v. Roper*, 460 F.3d 1026, 1040 (8th Cir. 2006) ("Nothing in our precedent suggests that the mere filing of a malpractice action is sufficient to create a conflict of interest."); *Atkins v. Wright*, 843 F. Supp. 457, 461 (N.D. Ind. 1994) ("It is also elementary that a criminal defendant cannot per se create a conflict of interest with his own attorney by suing that attorney.").  Accordingly, I find that there was no conflict of interest.  Second, even if there had been a conflict of interest, the remedy would have been to appoint substitute representation.  *See United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) ("To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which

leads to an apparently unjust verdict.").    In this case, Petitioner already had substitute representation:  himself.  Ms. Sanchez did not represent Petitioner, and therefore, Petitioner cannot sustain an ineffective-assistance-of-counsel claim against her for an alleged conflict of interest.  *See Lee*, 125 F. App'x at 217.  This claim, therefore, should be denied.

### IV.    Violation of Right to Speedy Trial

Finally, Petitioner asserts that his right to a speedy trial was violated.  [Doc. 1] at 18.  He alleges that the case "came before the [c]ourt in June [of] 2009 and took approximately 15–18 months to be heard by a [j]ury.  New Mexico law requires after 9 months that [the state] make all request[s] for extension[s of time] directly to the NM Supreme Court.  This did not happen."  *Id.* He concludes that "[t]his issue is reviewable by this Court."  *Id.*

Petitioner does not appear to raise a federal claim here but, rather, one based on New Mexico state law.   Of course, errors of state law are not cognizable in federal habeas actions.  § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, this claim should be denied.

In the alternative, however, even if the Petition is liberally construed as asserting a Sixth Amendment claim for violation of Petitioner's right to a speedy trial, the claim would still fail. In deciding speedy trial claims, courts must weigh four factors: "[1] the length of the delay, [2] the reason for the delay, [3] whether the defendant asserted his right to a speedy trial, and [4] whether the delay prejudiced the defendant."  *United States v. Tranakos*, 911 F.2d 1422, 1427 (10th Cir. 1990) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The length-of-delay factor serves as a "gatekeeper," and the other factors are examined only when the delay is so long that it is "presumptively prejudicial." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citations omitted). The Tenth Circuit has identified no bright line beyond which a pretrial delay is deemed presumptively prejudicial so as to trigger the *Barker* analysis. *See United States v. Yehling*, 456 F.3d 1236, 1244 (10th Cir. 2006); *United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994). Generally, delays "approaching one year" are presumptively prejudicial. *Batie*, 433 F.3d at 1290. Constitutional speedy trial rights attach at either arrest or indictment, whichever is earlier. *Id.* "The longer the delay, the more likely it is that the first factor will weigh in the defendant's favor." *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010). Here, Petitioner was indicted on August 12, 2009,[8] RP at 1, and his trial commenced on December 6, 2010, Transcript of Dec. 6, 2010 Proceedings. This delay—just shy of 16 months—is more than one year and, thus, is presumptively prejudicial. This factor weighs in favor of Petitioner.

The length of delay, however, is not the only consideration. Courts must also look at the reasons for the delay. "Delays attributable to the defendant do not weigh against the government." *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006). "[T]he reason for the delay[] 'weighs against the government in proportion to the degree to which the government caused the delay.'" *Yehling*, 456 F.3d at 1244 (quoting *Batie*, 433 F.3d at 1291)).

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

---

[8] It is unclear from the record whether Petitioner was arrested, or if so, when.

> Finally, a valid reason, such as a missing witness, should serve to
> justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted).

In this case, there is no evidence, or even suggestion, that the state attempted to delay the

trial in order to hamper the defense.  Furthermore, the state trial court expressly found that the

seven months between May 6, 2010 (when Petitioner was granted leave to represent himself) and

December 6, 2010 (when trial commenced) was attributable to Petitioner.  Transcript of Dec. 6,

2010 Proceedings at 122.   The trial court found that, although it was Petitioner's right to

represent himself, if he had chosen to keep his public defender, "certainly [the case] could have

been brought before the Court and jury at an earlier date."  *Id.*  Petitioner has not shown that such

finding is based on an unreasonable application of federal law or an unreasonable determination

of the facts in light of the evidence.  *See* § 2254.   Accordingly, seven months of the nearly

16 months' delay is attributable to Petitioner.  Delay in this case is attributable to both Petitioner

and the state.  This factor, therefore, does not weigh in favor of either party.

With respect to the third factor, Petitioner asserted his speedy trial rights, which does

weigh in his favor.

Finally, courts must assess whether a defendant was prejudiced by the delay in trying

him.  The speedy trial right was designed to:  "(i) to prevent oppressive pretrial incarceration;

(ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the

defense will be impaired."  *Barker*, at 532.  The last concern is the "most serious" because a

defendant's ability to prepare his case is central to the fairness of the entire system.  *Id.*

Here, I find that Petitioner fails to demonstrate that he was prejudiced by the delay.  He

was not in custody prior to the trial.  He does not allege that the delay deprived him of the use of

any evidence or the ability to call any witness.  He has not alleged "any special harm suffered [that] distinguishes his case from that of any other [defendant] awaiting trial." *Dirden*, 38 F.3d at 1138; [Doc. 1] at 18; *see also Tebbets v. Allenbrand*, No. 92-3329, 1993 U.S. App. LEXIS 3596 at *8−9 (10th Cir. Feb. 22, 1993) (unpublished) (no prejudice where defendant was not in custody while he waited 18 months for trial, where the delay did not deprive him of the use of any evidence, and where the delay attributable to the government was not purposeful or oppressive).  Because Petitioner has not shown any prejudice resulting from the delay, this factor weighs in favor of the government.

Although the length of delay in this case—nearly 16 months—is presumptively prejudicial, I find, on balance, that the other factors overcome this presumption.  Seven months of the delay is attributable to Petitioner himself, and even though nine months is attributable to the government, there is no evidence, or even suggestion, that the delay was purposeful or oppressive.  Petitioner was not prejudiced by the delay.  I find that the delay does not rise to the level of a constitutional violation.  This claim, therefore, should be denied.

## <u>Conclusion</u>

Petitioner has failed to establish that he is entitled to relief under § 2254.  Petitioner represented himself at trial in his own way, and he maintained control over the case that he presented.  Although standby counsel was appointed over Petitioner's objections, her presence did not destroy the jury's perception that he represented himself.  Accordingly his right to self-representation was not impermissibly eroded.  Similarly, his claims for ineffective assistance of counsel—for failing to appeal and for a conflict of interest—are meritless.  Additionally, Petitioner himself was responsible for some of the delay in bringing him to trial, and because he

has not shown any prejudice resulting from the delay, it does not rise to the level of a constitutional violation. Therefore, Petitioner fails to show that his state-court conviction resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of the facts. *See* § 2254.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Mr. Jackson's 28 U.S.C. § 2254 Petition [Doc. 1] be **DENIED** and that this case be **DISMISSED with prejudice**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**